UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYANNE M., | Case No.: 3:19-cv-02008-AHG |
| Plaintiff, | **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | **[ECF No. 17]** |
| Defendant. | |

Plaintiff Maryanne M. ("Plaintiff") filed this action on October 18, 2019, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for social security disability insurance benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on November 8, 2019. ECF No. 4. Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on June 22, 2020, stating their positions on the disputed issues in the case. ECF No. 17. The Court has taken the Joint Motion under submission without oral argument.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Although Plaintiff originally brought this action against Former Acting Commissioner Nancy Berryhill, this case may properly proceed against Andrew Saul pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Court **GRANTS** the Joint Motion, **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** for further proceedings.

## I.    BACKGROUND

Plaintiff was born in 1956. Administrative Record ("AR") at 57. Her past relevant work experience is as a clinical laboratory specialist. AR 25.

On July 24, 2015, Plaintiff filed an application for Social Security Disability Insurance, alleging a disability onset date of July 5, 2015. The Commissioner denied Plaintiff's claim on October 23, 2015, and denied Plaintiff's request for reconsideration of the denial on April 21, 2016. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 16, 2018. Plaintiff was represented by counsel at the hearing and provided testimony. A vocational expert also testified. AR 15.

On September 16, 2018, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff had not been under a disability through June 30, 2016, the date last insured. AR 26. Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 1. When the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*,

400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

### III.   SUMMARY OF ALJ'S FINDINGS

As an initial matter, Plaintiff had filed an earlier disability application that had been addressed in a prior ALJ's opinion. AR 16. Thus, the holding in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998) applies to Plaintiff's new claim. In *Chavez*, the Ninth Circuit held that a prior ALJ's findings concerning a claimant's residual functional capacity ("RFC") are entitled to some *res judicata* consideration in subsequent proceedings. *Id.* at 693. "[I]n order to overcome the presumption of continuing nondisability arising from the first [ALJ's] findings of nondisability," the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). In this case, the ALJ found that Plaintiff rebutted the presumption by showing a "changed circumstance" of additional impairments of "cervical radiculopathy, osteoarthritis, cervical and lumbar stenosis, headaches, … a dysfunctional sacroiliac joint, and lumbar degenerative disc disease." AR 16. The ALJ also found changed circumstances in Plaintiff's allegation of a "worsening of her musculoskeletal complaints." AR 16. Therefore, the ALJ proceeded with his analysis without applying a presumption of continuing nondisability.

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th

Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper)).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1).   The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsbury*, 468 F.3d at 1114-15; *Hill*, 698 F.3d at 1162. The determination

of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity from the alleged onset date of July 5, 2015, through the date last insured of June 30, 2016. AR 19. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, bilateral finger volar fractures, and right knee degenerative joint disease. AR 19.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listing. AR 20. The ALJ further determined that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b), "except she can perform no climbing of ladders, ropes, or scaffolds, can perform all other postural activities occasionally, can perform frequent bilateral handling and fingering, frequent bilateral upper extremity pushing, pulling, and overhead reaching, and must avoid concentrated exposure to hazards such as unprotected heights or dangerous machinery." AR 21.

At step four, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff was capable of performing past relevant work as a clinical laboratory specialist (DICOT 078.261-038, 1991 WL 646798, light as generally performed, skilled at Specific Vocational Preparation level (SVP) 7) through the date last insured. AR 25. Accordingly, the ALJ determined that Plaintiff was not disabled at any time from the alleged onset date of July 5, 2015, through the date last insured of June 30, 2016. AR 25.

### IV.   <u>FIRST ALLEGED ERROR: TREATING PHYSICIAN'S OPINION</u>

The first error asserted by Plaintiff is that the ALJ improperly rejected the opinion of Dr. Michael Kurisu, Plaintiff's treating physician. The ALJ provided the following analysis of Dr. Kurisu's opinion:

I give no significant weight to the opinions of Drs. Kurisu and Kruse insofar as these are not consistent with objective exam findings which consistently showed intact gait and sensation, and full range of motion of the extremities. (Exs. B6F, B10F, B11F, B14F, B16F).[3]

AR 24.

A key component of Dr. Kurisu's opinion, which is discussed in more detail below, is that Plaintiff cannot stand or sit for prolonged periods of time because of several issues in her lumbar region. AR 937. The ALJ's determination that Plaintiff could perform "light work" under 20 CFR § 404.1467(b) is in direct conflict with Dr. Kurisu's opinion because light work "requires a good deal of walking or standing," and "to be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR § 404.1567(b).

Plaintiff argues that the ALJ's rationale for rejecting Dr. Kurisu's opinion ignores Dr. Kurisu's findings related to Plaintiff's severe impairment of degenerative disc disease of the cervical and lumbar spine (findings that would preclude an RFC of light work), focusing instead on examination findings of intact gait and sensation. Plaintiff contends that although she presented with "normal gait and sensation, there were significant distortions to her spine due to scoliosis and somatic dysfunction, with significant objective clinical findings to support Dr. Kurisu's opinions." ECF No. 17 at 11. Plaintiff faults the ALJ for cherry-picking evidence in the record to support a finding of non-disability. Plaintiff points to a lengthy medical history of examinations that are consistent with Dr. Kurisu's 2018 opinion. Plaintiff also argues that the ALJ failed to consider that Dr. Kurisu's opinion is consistent with the record as a whole, providing additional citations to evidence that supports Plaintiff's claim of inability to work due to pain.

---

[3] The exhibits cited by the ALJ are the opinions of Dr. Kurisu, not evidence in the record that would call into question or contradict those opinions. The reference to "Dr. Kruse" in this passage appears to be based on the ALJ's misreading of Dr. Kurisu's handwritten name on his September 1, 2016 Medical Source Statement, which appears twice in the record at Exhibits B6F and B10F. AR 529-31; AR 778-80.

Defendant argues that the ALJ did not err in rejecting Dr. Kurisu's opinion. According to Defendant, the ALJ "evaluated all of the record evidence including the treatment records, Plaintiff's statements and testimony, and the medical source opinions." ECF No. 17 at 16. The ALJ found, based on the record, an RFC that reflected "unremarkable objective examination findings, Plaintiff's largely intact activities of daily living and her conservative treatment." *Id.* Defendant states that the RFC finding is supported by the assessments of non-examining state agency physicians Drs. Jacobs and Vu. Relying on *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996), Defendant also argues that Dr. Kurisu's opinions between September 2016 and August 2018 "were entitled to less weight because Dr. Kurisu provided them after Plaintiff's date last insured for disability benefits, June 30, 2016." ECF No. 17 at 17.

## A. Legal Standard

A treating physician's opinion is entitled to greater weight because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991)). Where the treating physician's opinion is controverted by another physician, it may be rejected only if the ALJ makes findings that set forth specific and legitimate reasons based on substantial evidence in the record. *See Magallanes*, 881 F.2d at 751; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). To meet this burden, an ALJ must provide "a detailed and thorough summary of the facts and

conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes*, 881 F.2d at 751).

Dr. Kurisu's opinion is controverted by the opinions of two non-examining State agency physicians, Dr. Jacobs and Dr. Vu. AR 149-155, 161-167. Contrary to Dr. Kurisu, Dr. Jacobs and Dr. Vu found that Plaintiff had the ability to perform light work, including standing, sitting, or walking about six hours in an eight-hour workday. AR 152, 165. It was incumbent on the ALJ, therefore, to set forth specific and legitimate reasons, based on substantial evidence in the record, to support his rejection of Dr. Kurisu's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

**B. Dr. Kurisu's Opinion**

Dr. Kurisu provided an opinion at Exhibit B16F dated August 24, 2018, regarding Plaintiff's ability to work. AR 936. At that time, Dr. Kurisu had treated Plaintiff for approximately seven years. AR 936. Dr. Kurisu stated that Plaintiff "has had debilitation from neuromuscular scoliosis of lumbar region, somatic dysfunction of cervical and lumbar region, and lumbar and cervical radiculopathy, sciatica, . . . ." AR 937. Dr. Kurisu noted that Plaintiff relied on doctor's visits, pain medicine consultations, acupuncture, physical therapy, yoga therapy, and massage therapy to alleviate her symptoms. AR 937. Dr. Kurisu opined that Plaintiff "cannot do repeated tasks that cause her to bend over repeatedly as well as stand or sit for any prolonged periods of time." AR 937. Dr. Kurisu noted that Plaintiff reported that sitting for prolonged periods of time causes headaches, nerve tingling, back spasms, and sciatic nerve pain. AR 937.

Dr. Kurisu pointed to objective evidence for Plaintiff's inability to sit for prolonged periods of time without pain:

- Somatic dysfunction of her spine, which causes her spine and her sacral-iliac joint to be out of alignment (AR 938);

- Scoliosis, which has progressed from mild to moderate as noted in a July 13, 2016 orthopedic evaluation (AR 938);

- MRI images showing spinal canal narrowing of her lower cervical spine, decreased spinal stability, right convex scoliosis, and degenerative changes (AR 938-39); and

- An EMG study showing chronic axonal loss and indicating a lesion in the proximal left sciatic nerve, lumbosacral plexus, or lumbosacral roots (AR 939).

Based on this evidence, Dr. Kurisu concluded that Plaintiff "is not able to sit for prolonged periods of time due to the fact of the increased gravitational pressure into the lower pelvic structure which would cause compensation pattern within the sacral-iliac joint as well as the lumbar-sacral joints with corresponding compensation pattern to the thoracic and cervical vertebrae leading to somatic dysfunction and physical expression of pain." AR 939.

Dr. Kurisu provided additional opinions that can be found at Exhibits B6F and B11F. AR 778-783. The ALJ also rejected those opinions. AR 24.[4] In Exhibit B6F, which is a Medical Source Statement of Ability to do Work Related Activities dated September 1, 2016, Dr. Kurisu reported that Plaintiff has monthly appointments with him for thirty minutes. AR 529. Plaintiffs' diagnoses from Dr. Kurisu include sacral pain, back pain, leg pain, radiculopathy, and fatigue. *Id.* Dr. Kurisu identified the following clinical findings and signs supporting Plaintiff's symptoms: "x-ray, MRI, [illegible], decreased ROM & somatic dysfunction, CBD, hip & knees." *Id.* Relevant here, Dr. Kurisu opined that Plaintiff could sit for less than two hours in an eight-hour workday, and could not sit for more than 30 minutes at one time. AR 529-30. Dr. Kurisu opined that Plaintiff could stand for less than two hours in an eight-hour workday, and could not stand for more than 15 minutes at one time. *Id.* Dr. Kurisu stated that Plaintiff needed a job that allows her to shift positions at will and take 20-30 minute unscheduled breaks to lie down or walk around. AR 530. Dr. Kurisu stated that Plaintiff can only occasionally lift and carry less

---

[4] In rejecting these opinions, the ALJ also cited to Exhibits B10F and B14F. Exhibit B10F is a duplicate of Exhibit B6F. AR 778-80. Exhibit B14F comprises Dr. Kurisu's treatment records and progress notes, which contain diagnoses and various other opinion evidence. AR 797-862.

than ten pounds, can rarely lift and carry up to ten pounds, and can never lift or carry twenty pounds. AR 530. Dr. Kurisu also stated that Plaintiff can rarely or never: twist, stoop (bend), crouch/squat, climb ladders, climb stairs, balance, or kneel. AR 531. Dr. Kurisu stated that Plaintiff has significant limitations with respect to reaching, handling, and fingering. AR 531. Dr. Kurisu opined that Plaintiff is likely to be off-task, meaning her symptoms would be severe enough to interfere with her attention and concentration, 25% or more of a typical workday. *Id.* Dr. Kurisu also opined that Plaintiff's impairments would cause her to be absent more than three workdays per month. *Id.*

Exhibit B11F includes Annual Physician's Statements completed by Dr. Kurisu and dated March 25, 2015; March 26, 2016; and April 10, 2017. AR 781-83. In the March 25, 2015 statement, Dr. Kurisu states that he sees Plaintiff on a monthly basis. AR 783. Dr. Kurisu describes Plaintiff as: "Unable to lift & carry > 10 lbs. Unable to stand for prolonged periods and/or sit for prolonged periods. Unable to have any strenuous physical activity." *Id.* Dr. Kurisu also noted that Plaintiff receives regular osteopathic treatments and physical therapy. *Id.* The Annual Physician's Statements dated March 26, 2016 and April 10, 2017 provide the same information regarding Plaintiff's condition. AR 781-82. Additionally, Exhibit B14F contains several progress notes from Plaintiff's appointments with Dr. Kurisu between December 1, 2017 and February 12, 2018. AR 797-862. These notes are consistent with Dr. Kurisu's opinion on August 24, 2018, at Exhibit B16F. AR 936-49.

Under the Social Security regulations, "light work" involves lifting up to twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, in addition to being able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting. *See* 20 C.F.R. § 1567(b) (explaining that a job is classified as "light work" when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls"); SSR 83-10, 1983 WL 31251, at *6 (1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday"). Thus, if credited, the limitations suggested by Dr. Kurisu would preclude the RFC of light work as determined by the ALJ.

### C. Opinions of Non-examining State Agency Physicians

The ALJ gave "some weight" to the opinions of the non-examining State agency physicians, Dr. Jacobs and Dr. Vu.  AR 24.  Dr. Jacobs issued an opinion on October 21, 2015.  AR 149, Ex. B4A. Dr. Jacobs concluded that Plaintiff could perform light work, including her past relevant work as a clinical lab specialist. *Id.* Dr. Vu issued an opinion on February 17, 2015. AR 161, Ex. B5A. Dr. Vu reached the same conclusions as Dr. Jacobs. Both consultants opined that Plaintiff could sit, stand, or work six hours in an eight-hour workday. AR 152, 165.

### D. Timing of Dr. Kurisu's Opinion

Before turning to the ALJ's rationale for giving little weight to Dr. Kurisu's opinion, the Court will address the Commissioner's argument on appeal that Dr. Kurisu's 2018 opinion is entitled to less weight because it is dated after Plaintiff's eligibility for benefits expired in 2016. The ALJ did not rely on the date of Dr. Kurisu's opinion as a ground for rejecting or discounting it. Defendant cannot defend the ALJ's decision with reasoning not relied on by the ALJ himself. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In any event, the Court finds that the cases relied on by Defendant do not support his position on this issue. In *Macri v. Chater*, 93 F.3d 540 (1996), the first case relied on by the Commissioner, the Ninth Circuit considered how the timing of a treating physician's opinion impacts the weight it should be given. *Id.* at 544. There, the claimant argued that the ALJ erred by rejecting a treating physician's reports that were dated from December 1987. *Id.* at 544. The claimant's eligibility for benefits expired on December 31, 1986. *Id.* at 543. The Ninth Circuit rejected the claimant's assertion of error with respect to those reports, finding that the ALJ discussed them and correctly found that

they were consistent with the ALJ's assessment of the claimant's RFC. *Id.* at 544. The Ninth Circuit did not make any finding that the reports were entitled to less weight because they were dated after the eligibility period. *Id.* The claimant also alleged, however, that the Appeals Council erred by finding that ***later*** reports from the same physician - dated in 1993, six to seven years after expiration of eligibility for benefits - did not warrant a remand. *Id.* The Ninth Circuit held that those reports should be considered "less persuasive" because they were issued after the ALJ's decision. *Id.*

This case is distinguishable from *Macri*. Dr. Kurisu submitted an opinion dated August 24, 2018. AR 936. The ALJ issued his decision on September 6, 2018. AR 26. This presents a substantially different factual circumstance than *Macri*, where the court held that reports dated six to seven years after expiration of the eligibility for benefits, ***and*** after the ALJ's decision, were entitled to less weight. Dr. Kurisu's 2018 opinion is consistent with treatment records dating as far back as 2015 that are within Plaintiff's eligibility period.

In *Lombardo v. Schweiker*, 749 F.2d 565 (9th Cir. 1984), the other case on which the Commissioner relies, the Ninth Circuit affirmed an ALJ decision that disregarded the opinion of a treating psychiatrist because he did not examine the claimant until more than a year after expiration of the claimant's insured status. *Id.* at 567. The court held that the ALJ "reasonably evaluated the remoteness of [the treating physician's] examination in weighing the value of his opinion." *Id. Lombardo* is also distinguishable. Although Dr. Kurisu's 2018 opinion came after the expiration of Plaintiff's insured status, he has treated Plaintiff regularly for many years, and the 2018 opinion is consistent with prior opinions that Dr. Kurisu gave during Plaintiff's eligibility period in March 2016. *See* AR 781-83. Therefore, even if the Court were to consider the *post-hoc* rationalization offered by the Commissioner for the ALJ's decision to discount the weight given to Dr. Kurisu's opinion, the Court disagrees that Dr. Kurisu's 2018 opinion is entitled to less weight because it is dated after Plaintiff's eligibility period.

\\

\\

### E. The ALJ Erred by Assigning No Weight to Dr. Kurisu's Opinion

The ALJ gave Dr. Kurisu's opinions "no significant weight . . . insofar as these are not consistent with objective exam findings which consistently showed intact gait and sensation, and full range of motion of the extremities." AR 24. The only citations to the record following this statement were to Dr. Kurisu's opinions. AR 24. Earlier in the decision, the ALJ pointed to notes from treatment records indicating that Plaintiff had normal range of motion, normal gait, and intact sensation. AR 23. The Court presumes the ALJ was referring to these records in assessing Dr. Kurisu's opinions. AR 23.

The Court agrees with Plaintiff that the ALJ failed to meet his burden to articulate specific and legitimate reasons to support his rejection of Dr. Kurisu's opinion. The ALJ's analysis of Dr. Kurisu's opinion is not legally sufficient. The ALJ "must do more than offer his conclusions." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2008). The ALJ must explain why his conclusions, rather than the treating physician's, are correct. *Id. See also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (explaining that an ALJ may meet the "specific and legitimate reasons" standard for rejecting a treating physician's opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). "A bare assertion by an ALJ that the objective medical evidence does not support a physician's opinion fails to constitute a specific and legitimate reason." *Carranza-Villalobos v. Berryhill*, No. 3:17-cv-02273-BEN-RNB, 2018 WL 6601087, *3 (S.D. Cal. Dec. 17, 2018) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The key conflict between the ALJ's RFC determination and Dr. Kurisu's opinion regarding Plaintiff's limitations is that Plaintiff cannot sit or stand for prolonged periods of time. The reasons provided by Dr. Kurisu for that conclusion are because of somatic dysfunction of Plaintiff's spine and spinal compression that are made worse when Plaintiff sits or stands for prolonged periods of time. AR 939. Dr. Kurisu's August 24, 2018 opinion cites to an extensive list of objective medical evidence to support that conclusion. *See* AR 938-39 (citing to Plaintiff's osteopathic exam, MRI images of Plaintiff's spine, an

EMG study Plaintiff received, and his physical examinations of Plaintiff, and explaining why this evidence supports his assessment of Plaintiff's physical limitations). The ALJ referred to some of this objective evidence in his decision. For example, at AR 22, the ALJ recognized that MRIs and x-rays showed degenerative disc disease. At AR 23, the ALJ noted that the same treatment notes that show normal range of motion and gait also show "scoliosis," "diffuse tenderness to palpation of the neck," "tenderness to palpation of the cervical and lumber spine," and "reduced cervical range of motion." But noting what the medical records say is not enough. In order to support his decision that Dr. Kurisu's opinion should be disregarded "insofar as [it was] not consistent" with some of the objective exam findings, the ALJ needed to explain how Dr. Kurisu's opinion was inconsistent with the objective exam findings of "intact gait and sensation, and full range of motion of the extremities," and why that inconsistency would outweigh the objective exam findings regarding the limitations caused by Plaintiff's spinal impairment that were recognized by both the ALJ and Dr. Kurisu and were consistent with Dr. Kurisu's opinion.

The fact that the non-examining State agency physicians came to a different conclusion regarding Plaintiff's ability to perform light work does not cure the error. *Id.* ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."). The non-examining physicians' opinions were based on the same medical records that Dr. Kurisu considered. "When a nontreating physician's opinion contradicts that of the treating physician – but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician – the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

The ALJ's decision here is deficient because it fails to provide any explanation as to how, or even to what extent, Dr. Kurisu's opinion regarding Plaintiff's inability to sit or stand for prolonged periods of time as a result of her spinal impairment (making her

incapable of light work) is inconsistent with objective exam findings that showed normal gait, sensation, and range of motion. The Court therefore finds that the ALJ erred in rejecting the opinion of Dr. Kurisu.

## V.    SECOND ALLEGED ERROR: EVALUATION OF PLAINTIFF'S TESTIMONY

Plaintiff argues that the ALJ erred by rejecting Plaintiff's testimony regarding pain without stating clear and convincing reasons for that rejection. Defendant contends that the ALJ gave legally valid reasons for discounting Plaintiff's testimony.

An ALJ evaluating a claimant's subjective complaints of pain must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, the ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Second, if the claimant meets the first test, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). The ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).[5]

_____

[5] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 404.159. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, No. 20-35114, 2021 WL 1105192, at *2 (9th Cir. Mar. 23, 2021)

1    The ALJ found that Plaintiff's medically determinable impairments could
2  reasonably be expected to cause some of her symptoms, satisfying the first step of the
3  inquiry. AR 24. The ALJ found no evidence of malingering. In order to avoid error, then,
4  the ALJ was required to state specific, clear and convincing reasons, supported by
5  substantial evidence, for rejecting Plaintiff's testimony concerning the intensity,
6  persistence, and limiting effects of her symptoms. *Austin v. Saul*, No. 19-35670, 2020 WL
7  7399004, at *2 (9th Cir. Dec. 17, 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2
8  (9th Cir. 2015)).

9    At step two, upon consideration of the objective medical evidence, the ALJ
10 concluded that Plaintiff's "statements concerning the intensity, persistence and limiting
11 effects of these symptoms are not entirely consistent with the medical evidence and other
12 evidence in the record for the reasons explained in this decision." AR 24. The Court will
13 address the reasons asserted by the ALJ in turn.

14 **A. Plaintiff's Daily Activities**

15   The first reason the ALJ gave for discounting Plaintiff's testimony is that she
16 "described daily activities which are not limited to the extent one would expect, given the
17 complaints of disabling symptoms and limitations." AR 24. The daily activities referenced
18 by the ALJ include caring for a pet, personal care, preparation of simple foods, some
19 household chores, driving, shopping, reading, watching television, talking to friends on the
20 phone, church, and yoga. *Id.* Daily activities can discredit a claimant's allegations if the
21 claimant "is able to spend a ***substantial part*** of [her] day engaged in pursuits involving the

22

23

─────────────────────

24 (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in
25 which the newer regulations were applied); *Vooge v. Saul*, No. 19-36115, 2021 WL
   1041708, at *1 (9th Cir. Mar. 18, 2021) (same, in case involving an ALJ's opinion issued
26 in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017)
27 (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's
   assessments of an individual's testimony).
28

performance of physical functions that are transferable to a work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (2001) (quoting *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)) (emphasis in original). Although the ALJ here referenced the daily activities of Plaintiff that he considered to contradict her testimony, he made no specific findings as to whether Plaintiff spends a substantial part of her day engaged in those activities, or how those activities involve physical functions that would transfer to a work setting. For this reason alone, Plaintiff's daily activities do not constitute a clear and convincing reason to reject her testimony. *See Holcomb v. Saul*, 832 F. App'x 505, 506 n.1 (9th Cir. 2020) (noting that it was error for an ALJ to discredit a claimant's symptom testimony based on the claimant's daily activities, without making "the ***required*** 'specific finding' that [the claimant] participated in those daily activities for a 'substantial part of his day.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) (emphasis added).

Moreover, the record does not support a finding that these activities are either transferable to work, or a substantial part of Plaintiff's day. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050. The only one of the activities listed by the ALJ that might require standing or sitting for long periods of time is driving a car. AR 24. However, Plaintiff testifies that she only drives a car two to three times per week for five- to fifteen-minute durations, which is entirely consistent with her stated inability to sit for long periods of time. AR 99. Her husband does the cooking at home. AR 99. She cannot vacuum or sweep, and is limited to sorting the laundry but cannot take it out of the dryer. AR 100. Her husband does most of the shopping, and she can only go to stores that are small. AR 101.

According to Plaintiff's hearing testimony, Plaintiff spends most of the day stretching, changing positions frequently to alleviate pain, reading, or talking to friends on the phone. AR 100. Plaintiff swims once or twice per week to take pressure off of her spine. AR 101. As noted by the Ninth Circuit in *Vertigan*, activities like yoga and swimming "are not necessarily transferable to the work setting with regard to the impact of pain. A patient

may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." 260 F.3d at 1050 (emphasis in original). The ALJ's reliance on these activities to discount Plaintiff's subjective symptom testimony is particularly unpersuasive here, where the medical evidence of record is rife with references to the fact that Plaintiff engaged in yoga and aquatherapy specifically to *treat her pain*, not as recreational activities indicating she has greater physical capabilities than she testified to. *See, e.g.*, AR 380 (January 13, 2015 treatment notes from Dr. Melanie Mae Aiken, noting that Plaintiff "has had osteopathic manipulation for her back, knees, neck, and fingers, also PT (and yoga PT), home ultrasound, inversion table, yoga, walking, stretching, exercise, massage, and homeopathic oils and creams"); AR 381-82 (January 2015 progress notes from Dr. Melanie Aiken and Dr. Gregory Polston at the UCSD Center for Pain Medicine noting that Plaintiff "may benefit from aqua therapy to provide exercise without weight bearing on her joints" and that she was going to start an aquatherapy program at the YMCA); AR 741-748, 752-776 (records from Plaintiff's physical therapy treatment at Embody Physical Therapy & Yoga, including a note from her initial examination on June 26, 2015 that Plaintiff "wishes to learn wellness Yoga techniques to assist with chronic cervical, and lumbar radicular techniques [as] well as R LBP [right lower back pain] from Scoliosis.").

The ALJ fails to explain how Plaintiff's daily activities are inconsistent with her subjective complaints regarding her limitations. Therefore, the Court does not find that this is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's testimony.

## B. Plaintiff's Conservative Medical Treatment

The ALJ also rejected Plaintiff's testimony because she has "not generally received the type of medical treatment one would expect for a totally disabled individual." AR 24. The ALJ reasoned that the treatment that Plaintiff has received, physical therapy and manual adjustments, is "routine and/or conservative." AR 24. Although "[a] conservative

course of treatment sometimes can justify the rejection of a claimant's testimony," *Overton v. Berryhill*, No. 3:17-cv-00025-BEN-BLM, 2018 WL 156315, *9 (S.D. Cal. Mar. 24, 2018), the Court finds that this is not a clear and convincing reason to reject Plaintiff's testimony on the record developed here. The medical record demonstrates that Plaintiff sought treatment for pain consistently throughout 2015 and 2016, including regular appointments with doctors in UCSD's pain management clinic for ongoing pain issues. *See, e.g.*, AR 379-83, 398-400, 435-37, 499-502, 589-90, 610-14, 644-48. Plaintiff sought treatment with a pain psychiatrist. AR 516-19, 563-65, 582-84, 595-97, 627-29. Plaintiff's continuing course of treatment supports her claim of disability. *Overton*, 2018 WL 156315, *9.

To the extent the ALJ supported this reason by noting that Plaintiff's "treatment providers did not indicate that she required surgery for any of her impairments, and there is no evidence she required narcotic medications or ongoing invasive treatment such as steroid injections or nerve ablations[,]" the Court finds this explanation is neither clear and convincing nor supported by substantial evidence in the record. Throughout Dr. Kurisu's treatment notes, it is documented in Plaintiff's treatment history that she initially began seeing Dr. Kurisu "for evaluation of her back and hip pain" that she had been having for approximately 1-2 years, which gets worse when she is in the seated position. *See, e.g.*, AR 377. Dr. Kurisu further notes that Plaintiff:

> . . . has had quite an extensive workup and has seen many physicians for this problem. She has gone to physical therapy twice[;] she [has] seen our sports medicine specialist as well as neurologist in the pain clinic. She has also been referred to the orthopedic specialist and the latest discussion is whether she should get an epidural steroid injection or facet joint block. ***She is unsure if she wants to continue with invasive procedures and was referred to me for any other options.***

*Id.* (emphasis added).

Moreover, the records show that in April of 2015, Plaintiff was prescribed and began using a gabapentin-ketoprofen-lidocaine cream to apply to painful areas. *See* AR 398-400.

During the visit when that cream was prescribed, Plaintiff stated to her doctor that she has "difficulties with oral medications." AR 400. Therefore, the evidence shows that more invasive treatments were considered by her treatment providers, but Plaintiff preferred or required alternative approaches. Accordingly, the Court does not find that the ALJ's finding that Plaintiff received "essentially routine and/or conservative" medical treatment is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's testimony.

### C. Success of Plaintiff's Treatment

The ALJ also rejected Plaintiff's testimony because her treatment has been "generally successful in controlling her symptoms, as she reported a 90 percent improvement with physical therapy, and that she was able to perform activities of daily living after taking her medical marijuana." AR 24. Although improvement with treatment is a relevant consideration, the evidence relied on by the ALJ does not show that her treatment has been successful in controlling her symptoms such that Plaintiff is able to perform work commensurate with the ALJ's RFC assessment.

The ALJ's statement that Plaintiff reported a "90 percent improvement with physical therapy" is a reference to physical therapy notes from July 2015 regarding physical therapy for Plaintiff's right knee impairment, not her spinal impairment. AR 331. These notes state, in legible part, that Plaintiff "presents upon re evaluation with reports of 90% improvement of symptoms since the start of physical therapy. Patient . . . to be limited in walking for longer than 25 minutes. Worst pain is 2/10 at the anterior and medial aspect of the knee with . . . contact." AR 331. The medical record establishes clearly that Plaintiff's doctor, Dr. Polston, referred Plaintiff to this physical therapy as a result of diagnoses of right knee pain and primary osteoarthritis of the right knee. AR 332-336, 342-347. The physical therapy that resulted in improvement, therefore, was unrelated to Plaintiff's back pain that is triggered by prolonged periods of sitting and standing. Indeed, although Plaintiff was separately referred for physical therapy by Dr. Kurisu for her back pain as well, the medical records documenting Plaintiff's physical therapy for her back pain—rather than her knee

pain—indicate that Plaintiff's functional goals included to "[r]estore prior level of function" of being "[a]ble to sit >45 min without numbness and pain" and being "[a]ble to stand > 30 min without numbness and pain." AR 348. The physical therapy records relevant to Plaintiff's lower back pain also show that Plaintiff's "[e]xtension and bilateral side bending is limited 50% with pain on the left lumbar spine. Strength is 3+/5 with pain into trunk flexion and 4/5 into extension[,]" and accordingly Plaintiff sought to "increase strength to "5/5 trunk flexion and extension, eliminate soft tissue tenderness of the lumbar paraspinals," in addition to being able to sit for longer than 45 minutes and stand for longer than 30 minutes without numbness and pain. *Id.* The ALJ does not cite to—and the Court cannot find—any record evidence indicating improvement in these symptoms caused by Plaintiff's spinal impairment.

The ALJ's reference to improvement with the use of medical marijuana appears to be based on notes from a pain clinic appointment on January 31, 2017. AR 648-49. These notes indicate that Plaintiff was using medical marijuana two times per day, and that it has allowed her to continue cooking, house cleaning, and exercise. AR 648. In evaluating the intensity and persistence of a claimant's symptoms and the extent to which symptoms limit a claimant's capacity for work, an ALJ may properly consider the effectiveness of any medication a claimant takes to alleviate pain under the regulations. *See* 20 C.F.R. § 404.1529(c)(3)(iv). However, that regulation requires the ALJ to consider the "***type***, dosage, effectiveness, ***and side effects*** of any medication [the claimant] take[s]" to alleviate pain or other symptoms. *Id.* The ALJ does not explain how Plaintiff's use of medical marijuana to treat pain is consistent with his determination of Plaintiff's RFC, which contains no mental limitations to account for the potential side effects of using marijuana. Moreover, any improvement noted in this record was reported after Plaintiff's date last insured, June 30, 2016. AR 19. Records from the relevant time period show that Plaintiff used medical marijuana to help her sleep, which does not amount to even a scintilla of evidence that Plaintiff would be capable of performing substantial gainful activity while under the influence of marijuana to help alleviate her pain symptoms. *See* AR 398. *See also*

AR 104 (Plaintiff's hearing testimony stating that she uses medical marijuana "at night so I can sleep" and that "the medical marijuana is [] sedating, so it makes me sleepy too.").

This evidence of "improvement" in Plaintiff's pain is also countered by the plethora of records cited above that show that Plaintiff continued to experience pain and seek treatment for it consistently throughout 2015 and 2016. Therefore, the Court does not find that this is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her pain.

## VI.   APPROPRIATE REMEDY

Having found that the ALJ erred, the next steps for the Court are to determine whether the error is harmless, and if not, the appropriate remedy.

If an ALJ's error is harmless, his decision will not be reversed. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (quoting *Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the ALJ's errors were not harmless. If Dr. Kurisu's opinion and Plaintiff's testimony concerning the limiting effects of her spinal impairment had been credited, the ALJ could not have issued an RFC finding that Plaintiff has the ability to perform "light work" under 20 CFR § 404.1567(b), which requires "a good deal of walking or standing," including the ability to stand or walk, off and on, for six hours out of an eight-hour work day, and the ability to lift up to ten pounds frequently and up to twenty pounds occasionally.

The appropriate remedy for the ALJ's errors is to remand for further proceedings. On remand, the ALJ should address the errors by properly evaluating Dr. Kurisu's opinion and Plaintiff's subjective testimony regarding Plaintiff's severe impairment of degenerative disc disease of the cervical and lumbar spine, and re-assessing Plaintiff's functional limitations in light of his reevaluation.

## VII.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed reversible error by rejecting Dr. Kurisu's opinion without specific and legitimate reasons supported by

substantial evidence, and by rejecting Plaintiff's testimony regarding the persistence, intensity, and limiting effects of her symptoms without clear and convincing reasons supported by substantial evidence.

The Court therefore **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** this action for further proceedings consistent with this opinion.

Dated:  March 30, 2021

Honorable Allison H. Goddard
United States Magistrate Judge

3:19-cv-2008-AHG